IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RA GLOBAL SERVICES, INC. f/k/a,** | § | |
| **REALAMERICA CO., and GEORGE E.** | § | |
| **BURCH III,** | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1562-L |
| | § | |
| **JONATHAN APPS, ABID C. HAMID,** | § | |
| **ANOTHONY B.B. CANNING,** | § | |
| **CAPIALINQ LIMITED, HARPAL** | § | |
| **RANDHAWA, GEM MANAGEMENT** | § | |
| **LTD., SUNDIP KUMAR, RA GLOBAL** | § | |
| **SERVICES LIMITED, NEW BROAD** | § | |
| **STREET SECURITIES LIMITED,** and | § | |
| **HUGH FRASER,** | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss, filed September 18, 2007. After careful review of the motion, response, reply, briefs, appendices, and the applicable authority, the court, for the reasons herein stated, **grants** Defendants' Motion to Dismiss.

## I. Factual and Procedural Background

Plaintiffs RA Global Services, Inc., f/k/a RealAmerica Co. ("RA Global"), and George Burch III ("Burch") (collectively, "Plaintiffs") bring claims for breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, fraudulent inducement, declaratory judgment, and conspiracy.[1] Plaintiffs allege that in 2005, RA Global needed operating capital and resources to fund

---

[1] Plaintiffs' allege that the court has specific personal jurisdiction over GEM Defendants because their tortious acts gave rise to the claims being asserted. They do not allege, and the court does not find, that there is general personal jurisdiction over GEM Defendants. Plaintiffs' breach of contract and declaratory judgment claims are not tort causes of action. Accordingly, Plaintiffs have failed to make a prima showing of personal jurisdiction over GEM Defendants with regard to their breach of contract and declaratory judgment claims.

**Memorandum Opinion and Order– Page 1**

its expansion efforts. Pls.' 2d Am. Pet. ¶ 19. RA Global approached Defendant Anthony B.B. Canning ("Canning") about this need and ultimately entered into a contract ("Agreement") with Defendant CapitalinQ Limited ("CapitalinQ"), which Canning led RA Global to believe was owned or controlled by Canning. *Id.* CapitalinQ was actually controlled by Defendants Harpal Randhawa ("Randhawa") and GEM Management, Ltd.("GEM") (which is owned/controlled by Randhawa). *Id.* ¶ 22. According to the Agreement, CapitalinQ was to provide various services to RA Global, including assisting with banking relationships, introducing RA Global to sources of capital, and helping negotiate with the targeted sources of capital. *Id.* ¶ 20. Canning represented to RA Global that the advice and services rendered to RA Global would be unbiased and independent. *Id.* ¶ 21.

Pursuant to the Agreement, CapitalinQ introduced RA Global to Randhawa and GEM as sources of capital. *Id.* ¶ 22. CapitalinQ also introduced RA Global to Defendant New Broad Street Securities Limited ("NBSS") as a potential investor. *Id.* ¶ 23. NBSS is owned by GEM. Pls.' Ex. B, Kumar Dep. 81:20-22. On February 6, 2006, upon advice of CapitalinQ, RA Global entered into a loan agreement with GEM for $300,000 ("February Loan"), which was guaranteed by Burch. *Id.* ¶ 24. On April 21, 2006, RA Global entered into another loan agreement with GEM for $800,000 ("April Loan", together with the February Loan, the "Loans"), which was secured by a warrant for the issuance of 800,000 shares of RA Global stock and was also guaranteed by Burch. *Id.* ¶ 26. On April 25, 2006, Real America purchased a 49% interest in Intergulf Oilfield and Marine Services, LLC ("IGOMS") that entitled it to receive 80% of the net profits of IGOMS. *Id.* ¶ 28.

In late summer 2006, RA Global was unable to meet the obligations of the Loans. *Id.* ¶ 29. Therefore, on August 26, 2006, RA Global entered into a Memorandum of Understanding ("MOU") with, among other creditors, GEM, NBSS, and CapitalinQ (which RA Global owed for outstanding

fees and unreimbursed expenses). *Id.* The MOU provided for: (i) the outstanding warrants and loan agreements to be cancelled and replaced by new loan agreements, (ii) the issuance of 15.5 million shares of fully paid, nonassessable shares of RA Global stock, and (iii) the execution of the Escrow Deed, which governed RA Global's shares of IGOMS that were being held in escrow. *Id.* ¶ 30-32. The Escrow Deed provides that if RA Global defaults, GEM would receive the IGOMS shares, but if RA Global pays as agreed, the IGOMS shares would be returned to RA Global. *Id.* ¶ 33.

Pursuant to the MOU and the new loan agreements, GEM required RA Global to allow it to select a director on RA Global's board of directors ("the Board") so that GEM would have some control over RA Global's corporate governance. Pls.' Ex. A, Randhawa Dep. 72:17-24. Defendant Sundip Kumar ("Kumar") was appointed as a director on the Board and attended meetings by telephone. Pls.' Ex. B, Kumar Dep. 103:9-21, 116:17-24. Kumar was the informal chief financial officer ("CFO") of GEM and de facto CFO of NBSS. *Id.* 23:3-5, 87:16-18. Also pursuant to the MOU and the new loan agreements, Defendant Jonathan Apps ("Apps") was named CFO of RA Global and Defendant Abid C. Hamid ("Hamid") was named chief executive officer. Pls.' Ex. C, Burch Aff.¶ 13. Randhawa required that Apps and Hamid be the only signatories on RA Global's bank accounts. Pls.' Ex. D, Burch Aff.¶ 10, Ex. 4.

Although RA Global was originally supposed to have paid its loans by July 31, 2007, in return for an issuance of one million shares of RA Global, Plaintiffs contend that the creditors agreed to extend the deadline to approximately October 31, 2007. *Id.* ¶ 43-44. Plaintiffs filed this action in state court on August 23, 2007and sought injunctive relief. On August 28, 2007, RA Global received a "Notice of Default and Notice of Acceleration," and GEM demands that Fraser, the escrow agent, transfer the IGOMS shares to GEM. *Id.* ¶ 49-50.

On September 5, 2007, the state court issued a temporary restraining order that, among other things, prevented the transfer of the IGOMS shares to GEM and set a temporary injunction hearing for September 13, 2007. On September 13, 2007, GEM, Kumar, and Randhawa (the only three defendants that had been served at the time) removed the case to federal court. On September 10, 2007, Fraser decided that he should transfer the IGOMS shares to GEM on September 30, 2007. *Id.* ¶ 50. On September 14, 2007, Plaintiffs filed an Emergency Motion for Temporary Restraining Order, and on September 17, 2007, the court set a hearing on Plaintiffs' motion. On September 18, 2007, GEM, NBSS (which was served on September 13, 2007), Randhawa, and Kumar (collectively, "GEM Defendants") filed Defendants' Motion to Dismiss based on lack of personal jurisdiction, lack of subject matter jurisdiction[2], improper venue, and *forum non conveniens*.

## II. Personal Jurisdiction Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving

---

[2]GEM Defendants admit that their subject matter jurisdiction argument was based on a forum selection clause. Temp. Res. Order Hr'g Tr. 3:21-4:6, Sept. 19, 2007. The court finds that it court has subject matter jurisdiction based on complete diversity of citizenship and an amount in controversy in excess of $75,000 and that the forum selection argument relates to venue rather than subject matter jurisdiction. Accordingly, the court denies Defendants' Motion to Dismiss to the extent it is based on lack of subject matter jurisdiction.

**Memorandum Opinion and Order– Page 4**

affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**III.     Discussion**

Because Plaintiffs do not contend that general personal jurisdiction exists and the record does not establish that GEM Defendants' contacts with Texas are continuous, systematic, and substantial, the court determines that it lacks general personal jurisdiction over GEM Defendants. Therefore, the court now looks to determine whether Plaintiffs have alleged a prima facie case for specific personal jurisdiction over the GEM Defendants.

Plaintiffs argue that the court has specific personal jurisdiction over the GEM Defendants because their tortious acts gave rise to the claims being asserted. Plaintiffs specifically allege the tortious conduct to include:

> (1) the material omission of disclosure of GEM, NBSS, and CapitalinQ's relationship; (2) Randhawa's acts in furtherance of his plan to gain control over [RA Global] and its assets, including IGOMS; (3) Kumar's appointment as a GEM director and participation in board decisions at [RA Global]'s board meetings; (4) Randhawa's excessive control of [RA Global]'s business operations, including his negotiation of Martin's resignation and his attempt to do the same with Johnston; (5) the Defendants' agreement to extend the relevant loans and then subsequently reneging; (6) Randhawa's negotiation of Apps and Hamid's salaries and his control over them; (7) Randhawa's effective control over [RA Global]'s Texas bank accounts; (8) Randhawa's and GEM's obtaining of an appraisal of the IGOMS assets at [RA Global]'s expense without [RA Global]'s approval, and then hiding it from [RA Global]; (9) all Defendants' repeated purposeful communications with the forum; and (10) the series of contracts between the parties, all of which taken together drove [RA Global] into deep financial crisis in Summer 2007 and have caused it to suffer substantial damages, including the potential loss of the IGOMS stock.

Pls.' Resp. To Defs.' Mot. to Dismiss 13-14; *see generally* Pls.' 2d Am. Pet. (detailing Plaintiffs' allegations of defendants' tortious conduct). Plaintiffs also argue that considerations of fair play and substantial justice allow the court to exercise jurisdiction over the GEM Defendants because only

in rare cases will these considerations prevent the exercise of personal jurisdiction when minimum contacts have been established and because the forum selection clauses do not govern any of Plaintiffs' claims.

GEM Defendants counter that they committed no tortious acts as a matter of law because GEM had no duty to disclose its stake in CapitalinQ, Plaintiffs have not alleged that Kumar breached his fiduciary duties as RA Global director, and Randhawa's actions did not rise to level a sufficient to create a duty in tort. GEM Defendants further argue that considerations of fair play and substantial justice prevent the court from exercising jurisdiction over the them because Plaintiffs' contacts with Texas are not significant, the GEM Defendants have no contacts in Texas, and England is the only location where all parties and issues can be joined.

The underlying determination for evaluating jurisdiction is whether the defendant could reasonably expect to be haled into court in the forum state. *Burger King Corp.*, 471 U.S. at 474. If a nonresident defendant's alleged intentional tortious actions are specifically aimed at the forum state, "and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions*.*" *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Stated differently:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of action arising from its offenses or quasi-offenses . . . . Even an act done outside that state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences of the

effects are seriously harmful and were intended or highly likely to follow for the nonresident's conduct.

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628, *reh'g denied*, 199 F.3d 441 (5th Cir. 1999) (internal citations omitted).

Taking as true the uncontroverted allegations in Plaintiffs' Second Amended Complaint[3] and resolving all conflicts between the facts contained in the parties' affidavits in favor of Plaintiffs, the court determines that there is no evidence that GEM Defendants targeted their allegedly tortious activities at Texas. The court also determines that there is no evidence that the GEM Defendants knew that the brunt of Plaintiffs' injury would be felt in Texas.

Plaintiffs allege that the GEM Defendants committed various torts and that these torts were committed primarily for the purpose of (1) "abscond[ing] with the assets of [RA Global]," including the IGOMS shares; (2) paying off the "new" loans signed pursuant to the Memorandum of Understanding; and (3) gaining control of the company from the 15.5million shares and warrants issued pursuant to the loan agreements and the MOU. Pls. Sec. Am. Compl. ¶ 50. Plaintiffs contend that because RA Global is headquartered in Texas, all of its material business decisions originate from Texas, almost all of its board meetings are held in Texas, and all of its bank accounts are located in Texas, "to the extent any act or omission by Defendant had a financial impact on [RA Global], the effect or impact was felt wholly within the State of Texas." Pls.' Resp. To Defs.' Mot. to Dismiss 3.

RA Global is a Delaware corporation with its principal place of business in Texas. "The mere fact that a Delaware corporation had its headquarters in Texas at the time of the allegedly

---

[3]The factual allegations in Plaintiffs' Third Amended Complaint, filed November 30, 2007, are identical to those in Plaintiffs' Second Amended Petition. Accordingly, the court reaches the same result whether it considers the allegations in the Third Amended Complaint or the Second Amended Petition.

**Memorandum Opinion and Order– Page 9**

wrongful act is not sufficient minimum contacts to give Texas courts personal jurisdiction over a nonresident director who commits a tort against the corporation." *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 733 (Tex. App.–Dallas 2003, no pet.). Moreover, the effects test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). Rather, "the effects of an alleged intentional tort are to be assessed as a part of the analysis of the defendant's relevant contacts with the forum state. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case." *Id.* at 287. (internal quotation marks and citation omitted).

Other than IGOMS, Plaintiffs do not allege injury to any specific assets. The IGOMS facility is located in Dubai. Prelim. Inj. Hr'g Tr. 18: 18-19, Nov. 19, 2007. Therefore, any tortious actions targeted at IGOMS are not specifically aimed at Texas and GEM Defendants would not know that the brunt of the injury would be felt in Texas. Accordingly, GEM Defendants would not reasonably anticipate being haled into court in Texas to answer for tortious actions relating to IGOMS.

Likewise, tortious actions committed in attempts to repay loans made pursuant to the MOU are not specifically aimed at Texas, and GEM Defendants would not know that the brunt of the injury would be felt in Texas. The MOU was negotiated in London and is governed by the laws of another country.

Plaintiffs' allegations regarding the tortious actions committed in attempts to gain or retain control of the company by obtaining 15.5million shares face a similar fate. The record establishes that, pursuant to the MOU, each lender received a proportionate share of RA Global stock in exchange for an agreement to extend its underlying loan. Prelim. Inj. Hr'g Tr. 65:17-21, Nov. 19,

2007. Any injury caused by this transaction was caused by the tortious conduct surrounding the MOU, which, as previously discussed, was not specifically aimed at Texas.

There is insufficient evidence that GEM Defendants targeted their allegedly tortious activities at Texas or that the GEM Defendants knew that the brunt of Plaintiffs' injury would be felt in Texas. Moreover, Plaintiffs' reliance on Kumar's appointment as a GEM director and participation in board meetings and GEM Defendants' communications with the forum upon which Plaintiffs rely to establish personal jurisdiction to establish minimum contacts is misplaced. As GEM Defendants correctly point out, these contacts are insufficient to establish personal jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 215 (1977) (accepting position as officer or director does not demonstrate purposeful availment)*; General Elec. Capital Corp. v. Posey,* 2006 WL 708163 * 4 (N.D. Tex., March 20, 2006) (plaintiff cannot rely on fact that defendant was a director of corporation with its principal place of business in Texas, but instead must tie defendant's allegedly tortious conduct to the forum); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir.) (exchange of communication in development of contract insufficient to be characterized as purposeful activity invoking benefits and protections of Texas laws), *cert. denied*, 466 U.S. 962, *reh'g denied*, 467 U.S. 1257 (1984). Therefore, the GEM Defendants do not have sufficient minimum contacts with Texas to permit the court to exercise personal jurisdiction over them.

Assuming *arguendo* that GEM Defendants have the requisite minimum contacts with Texas, the court concludes that this is one of the rare cases where the exercise of jurisdiction will not comport with fair play and substantial justice. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal*, 480 U.S. at

115. As previously stated, there are five factors the court examines in determining fairness and reasonableness of the exercise of personal jurisdiction. The court addresses each in turn.

With respect to the first factor, the defendant's burden, Plaintiffs argue that although this factor weighs in favor of GEM Defendants, their burden is counterbalanced by Plaintiffs' interests in litigating in Texas. GEM Defendants each have contacts outside of the country. Plaintiffs were introduced to the alleged tortfeasors and negotiated the various contracts at the heart of this case in England or Dubai. Although GEM Defendants corresponded with Plaintiffs located in Texas, none of the GEM Defendants ever traveled to Texas in connection with matters relating to this case. Plaintiffs, on the other hand, often traveled to London to meet with various defendants in this case. It follows that a majority of the witnesses and evidence in this case is located outside of Texas. The property for which Plaintiffs seek injunctive relief is located in Dubai. This factor weighs against Plaintiffs.

With respect to the second factor, the forum state's interests, Plaintiffs contend that Texas has an interest because the case involves intentional torts directed at Texas residents. As discussed previously, however, the court finds no evidence that the tortious conduct was directed at this forum. This factor also weighs against Plaintiffs.

With respect to the third factor, the plaintiff's interest in convenient and effective relief, Plaintiffs argue that it weighs in their favor because they are residents of Texas. Since all defendants, the evidence, and virtually all likely witnesses in this case are located in Europe, Texas is not the forum best suited to fashion meaningful relief. Further, GEM and NBSS have filed a related lawsuit in England. Prelim. Inj. Hr'g Tr. 83:12-15, Nov. 19, 2007. The Texas forum is unable to "bring all the parties into one courtroom for a single resolution." *Ruston Gas Turbines*, 9 F.3d at 421.

Moreover, Plaintiffs often traveled to England to meet and negotiate with the various international defendants. Although it may be inconvenient, it is not unreasonable to require them to travel to pursue litigation in a forum that can provide effective relief. The court determines that this factor also weighs against Plaintiffs.

With respect to the fourth factor, the judicial system's interest in efficient resolution of controversies, Plaintiffs concede that the "piecemeal litigation" of this case would not result in its efficient resolution. As the court concluded above, Texas is not the forum best suited to fashion meaningful relief. This factor also weighs against Plaintiffs.

With respect to the fifth factor, the state's shared interest in furthering social policies, *Asahi* guides the court's considerations:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant . . . , as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

*Asahi*, 480 U.S. at 115. Based on the court's determination of the other four factors, this factor also weighs against Plaintiffs. The court recognizes that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114. In this case, however, the interests of Plaintiffs and the state of Texas is slight. The alleged tortious conduct occurred outside the United States, Plaintiffs fail to establish that the effects of the allegedly tortious conduct were felt in Texas, and there is related litigation pending in England. Because all five factors weigh in favor

of GEM Defendants, the exercise of jurisdiction over them does not comport with fair play and substantial justice.

## IV. Conclusion

GEM Defendants do not have sufficient minimum contacts with Texas. Further, for the reasons herein stated, the exercise of jurisdiction over them will not comport with fair play and substantial justice. Accordingly, the court **grants** Defendants' Motion to Dismiss based on lack of personal jurisdiction. Because the court grants the motion based on its lack of personal jurisdiction, it will not reach the alternate bases upon which the GEM Defendants have moved to dismiss this action against them. The court **dismisses** this action against GEM Defendants **without prejudice**.

As the court has dismissed this action for lack of personal jurisdiction and the temporary restraining order expires today, the issue of a preliminary injunction is now moot. Accordingly, Plaintiffs' Request for Injunctive Relief is **denied as moot**.

The court realizes that Plaintiffs' Motion for Contempt is pending. At this juncture, however, the court is unsure whether the motion is viable. To determine the motion's viability, the court must conduct research as to whether a party can be held in contempt for conduct committed prior to a court's determination of whether personal jurisdiction existed over that party. In other words, the question is whether a court has the authority to preserve the integrity of its orders until the issue of personal jurisdiction is resolved. The court will rule on Plaintiffs' motion after it determines this

issue. If the court determines that it has authority to hold a person in contempt under these circumstances, it will proceed with the contempt matter.

**It is so ordered** this 6th day of December, 2007.

                                                      /s/ Sam A. Lindsay
                                                    Sam A. Lindsay
                                                    United States District Judge